FOSTER-GRAYSON LUMBER COMPANY *v.* BOND.

4-5379                          125 S. W. 2d 106

Opinion delivered February 20, 1939.

W. H. Kitchens, Jr., for appellant.
Hawkins & Keith, H. M. Barnes, for appellee.

MEHAFFY, J.  On January 24, 1924, W. D. Wingfield and wife, and B. A. Moody and wife executed and deliv-

ered a mortgage to the Columbia County Bank on 1,220 acres of land, including the 40 acres involved in this suit, to secure the sum of $8,490.42. This mortgage was recorded January 25, 1924. On January 29, 1924, the mortgagors executed and delivered to appellee, J. N. Bond, a warranty deed to the 40 acres and the same was recorded February 2, 1924.

In October, 1928, suit was filed to foreclose said mortgage and a decree entered in September, 1929, in favor of the Columbia County Bank against the mortgagors for the amount due, with interest, together with lien on said 1,220 acres, subject to a prior lien in favor of one Anne Mower. The land was sold to the Columbia County Bank, a commissioner's deed was presented and approved by the court on January 30, 1930, and ordered recorded. A *scire facias* to revive said judgment issued July 18, 1932, and judgment was revived October 27, 1932. Appellee was not made party to any of said proceedings.

The Columbia County Bank was consolidated with the Peoples Bank under the name of Columbia-Peoples Bank on December 1, 1931, and this bank became insolvent and was taken in charge by the Bank Commissioner in May, 1934. On April 10, 1936, the State Bank Commissioner sold 1,100 acres, including the 40 acres in question, to appellant for the sum of $12,500.

This action was instituted on June 18, 1937, by appellants, alleging the facts above set forth and that the lands described included the northwest quarter of the southeast quarter of section 30, township 19 south, range 19 west. It was alleged in the complaint that when the mortgage was executed to the Columbia County Bank it had no knowledge of the deed made to appellee and received no knowledge until June 12, 1937.

Foreclosure proceedings were begun, as mentioned above, and the land, including the 40 acres here involved, was sold by the Commissioner to the Columbia County Bank and said sale and Commissioner's deed were approved by the court, and the deed recorded in 1930.

The appellants pray that the appellee, J. N. Bond, be given a reasonable time within which to redeem said

40 acres for such amount as may be adjudged to be due on said 40-acre tract; that if J. N. Bond fails to pay to appellant the amount adjudicated within the time allowed, or fails to plead herein whatsoever, the prayer is that the deed to Bond be found inferior and subordinate to appellant's deed, and that title to said 40 acres be quieted in appellants.

After constructive service, appellee appeared and filed an answer denying the allegations of the complaint and alleging that he purchased the property on January 29, 1924; a warranty deed was executed and delivered to him, and was filed for record on February 2, 1924. He denies that appellants had no actual knowledge of the existence of this deed. Further answering, he alleges that before the deed from Moody and Wingfield was delivered to him, the Columbia County Bank agreed and promised to satisfy the mortgage covering this land, and the justice of the peace making the deed was advised to hold it until advised from the bank that the mortgage had been satisfied, and said justice of the peace did hold said deed until he was advised by the Columbia County Bank that said mortgage was satisfied and then delivered same to appellee. Appellee alleges that on January 29, 1924, he went into possession of said land, cleared it, built fences and started cultivating same; that he had been in open, exclusive, adverse possession of same at all times since January 29, 1924; had assessed the land for taxes in his name and has at all times since 1924 paid taxes on said land and if the appellants or the ones under whom they claim title ever had any interest in said land, the interest is now barred by the statute of limitations. Appellee prays that complaint of appellants be dismissed for want of equity, and that title of said land be quieted in him as against said appellants.

On April 27, 1938, the court entered a decree dismissing appellants' complaint for want of equity, and quieting title to the above described 40 acres of land in appellee, J. N. Bond. The case is here on appeal.

The following agreement was entered into:

"By stipulation, following records of Columbia county affecting land in question were introduced in evi-

dence, and it was agreed appellee was not made a party to the foreclosure proceedings or any proceedings based thereon.

"Deed of trust by W. D. Wingfield *et ux* and B. A. Moody *et ux* to Columbia County Bank to secure $8,-490.42, due December 1, 1924, with eight per cent. interest thereon from date until paid; acknowledged by W. D. Wingfield *et ux,* B. A. Moody *et ux,* filed for record January 24, 1924, and recorded January 25, 1924.

"Warranty deed executed and delivered by B. A. Moody *et ux* and W. D. Wingfield *et ux* to J. N. Bond, dated and acknowledged January 29, 1924, filed for record and recorded February 2, 1924.

"Decree foreclosing mortgage described above; judgment for Columbia County Bank against W. D. Wingfield *et ux* and B. A. Moody *et ux* for sum of $7,-884.35 with eight per cent. interest from September 19, 1929, until paid, together with lien on 1,220 acres, subject to prior lien in favor of one Anne Penfield Mower, executrix, in amount of $3,170.61.

"Commissioner's report of sale based on said decree, wherein the land was sold to Columbia County Bank on December 31, 1929, for sum of $5,920.01, Commissioner's deed presented and approved on January 30, 1930, and ordered recorded.

"Commissioner's deed, based on said decree and sale, filed for record January 30, 1930, recorded January 31, 1930.

"*Scire Facias* to revive said judgment issued July 18, 1932, served on B. A. Moody *et ux* July 19, 1932, and on W. D. Wingfield *et ux* July 27, 1932.

"Decree of revival of said judgment dated October 27, 1932.

"Deed from Marion Wasson, State Bank Commissioner, to appellant, Foster-Grayson Lumber Company, dated and acknowledged April 10, 1936, filed for record December 22, 1936, and recorded December 23, 1936, whereby 1,100 acres, including 40 acres in question, were conveyed for a stated consideration of $11,000."

The evidence on the part of the appellee was to the effect that the appellee bought the land from Wingfield

and Moody and learned at the time he agreed to purchase, that someone had a mortgage on it; the deed and money was placed with W. A. Malloch; money to be paid to the grantors when the mortgage was cleared, and the deed to be delivered to witness. The deal was held up for several days until Mr. Moody could state that the mortgage was cleared; after securing the deed appellee took immediate possession, erected buildings thereon, and cleared and fenced the land, putting about 35 acres in cultivation. Mr. Hardaway was in charge for appellee. No one has ever claimed title adverse to appellee prior to the filing of this suit, except that McNeill wrote him that he, witness, was paying taxes on 40 acres of the land they owned; witness told McNeill that he had bought the land and paid for it, whereupon McNeill said that he would see Moody and get it straightened out, and that is the last he heard of it; does not remember the exact date, but it was about 1924; he paid $400 for the land and did not learn that the Columbia County Bank had a mortgage on the land until McNeill wrote him that he was paying taxes on property they owned; Moody and Wingfield agreed to get a release from the mortgagee and this was left entirely to Mr. Malloch and Mr. Moody; the $400 was to be paid to Moody and Wingfield; he made his first crop on the land about 1927; McNeill wrote him about seven years after he bought the land and he went to see him and McNeill told him the money was paid by Mr. Moody and he would straighten it out; appellee has paid taxes on the land every year since 1924.

W. J. Malloch testified that appellee asked him to hold the money and to pay Moody and Wingfield upon instructions from the bank that the mortgage had been satisfied; he also held the deed. After a few days witness received a letter from McNeill that the papers were satisfied and to go ahead and deliver the deed and money; this was written information and the signature appeared to be McNeill's. Does not remember the contents except in a general way; it stated substantially that that was his authority to deliver the papers and deeds and turn over the money; does not remember the exact words; arrangements were made between Moody, Bond and the bank and

they were to furnish witness with a statement telling him the record was clear before he delivered the deed to Mr. Bond or the money to Mr. Moody; witness knew that McNeill was cashier of the bank.

Mr. Moody, a witness, testified that he and Wingfield sold the land to Bond advising him at the time that it was under mortgage to the Columbia County Bank; witness agreed to see McNeill and try to get the land released from the mortgage; McNeill stated to witness that he would satisfy the mortgage on the land; this occurred a few days after witness sold the land to Bond and witness reported this to appellee; some six or seven years later, when witness was advised that the mortgage had not been satisfied he went to see McNeill and was advised by him to see the president of the bank who stated that he was not interested; Mr. Hutchinson was not president of the bank when he had his first conversation with McNeill; told McNeill that Malloch was holding the deed and money until they got the title straight; witness voluntarily gave mortgage to the bank to secure a prior indebtedness and did not borrow any additional money at that time; witness asked McNeill in 1924 about releasing the mortgage, and he said it would be all right to go ahead and he would release the 40 acres; did not obtain a written release, but thought McNeill's statement would be all that was necessary; has never seen the written instrument Mr. Malloch testified about, but he said he received a written statement from McNeill.

Mr. Hardaway testified that he rented the land from appellee in 1926, about 25 acres in cultivation, four or five in woods, balance in pasture, all under rail fence; had not known of anyone claiming interest in the land adversely to appellee and has known of no one claiming except appellee; the bank has not had any control over it; the rail fence around the land burned and witness fenced it with wire in 1935 for appellee.

E. L. Waller and Bayless Lindsay testified that they had known the land for several years and that when appellee bought it it was wild and unimproved and appellee immediately commenced to clear and improve and fence it; nearly all of the land is in cultivation; they do not

know anyone, nor have they heard of anyone having any claim to the land adverse to appellee since he bought it; the bank has had nothing to do with farming, clearing, fencing or cultivation of the land.

J. C. McNeill testified that he was cashier of the Columbia County Bank in 1924 and until the bank was consolidated with the Peoples Bank in 1932; he recalls the Columbia County Bank obtained a mortgage from Wingfield and Moody on several hundred acres of land in 1924; that witness wrote Moody in 1930 that if $400 was paid to the bank it would release the 40 acres, and he said this was the first time the board ever considered the release of the 40 acres; nothing had been paid for the release, and he denied writing Malloch and stated he would not have had any authority without a resolution of the board. In 1930 he got authority from the board of directors to accept $400.

A. P. Walker, county and probate clerk, testified that the land in question was assessed to Columbia County Bank and also to appellee in the years 1930 and 1931; the bank paid taxes in 1933; appellee appears to have assessed the land every year, but he has no record showing he paid the taxes.

McNeill then introduced a letter that he had written to Moody, dated July 29, 1930. He also testified that he did not remember talking to appellee and that Malloch was mistaken and he could not recall anyone to whom he wrote in 1924 unless he had a copy of the letter; did not write such a letter to Malloch; does not recall talking to appellee and does not know why appellee was not included in the foreclosure suit.

The appellants insist that the bank was not charged with any notice of appellee's deed because it was made subsequent to the mortgage, and that an agreement to satisfy a mortgage must be shown by clear, satisfactory, and convincing evidence. They call attention first to *Riley* v. *Atherton*, 185 Ark. 425, 47 S. W. 2d 568.

In the case referred to the court quoted from 19 R. C. L. that an agreement to release the mortgagor from his personal liability must be established by clear and convincing evidence, for the effect thereof is to set aside

the written contract. That is not the question here. The parol release was not to release the mortgagor from any liability at all, but all of the evidence shows that the appellee here was to pay the $400 when the mortgage on this 40 acres was released, and there was no agreement to release the mortgagor from any liability.

But, as argued by the appellants, the appellee claims not only that there was an agreement to release the 40 acres from the mortgage, but that appellee claimed title also by adverse possession. Appellants cite and rely on *First State Bank of Eureka Springs* v. *Cook*, 192 Ark. 213, 96 S. W. 2d 510. The court said in that case: "A purchaser from the mortgagor stands in no better position than the mortgagor himself as to gaining title by possession and lapse of time, if the mortgage be recorded. The record is notice of the mortgage to a subsequent purchaser; and the mere fact that he has had actual possession under his purchase for the statute period of limitation is no bar to a foreclosure of the mortgage."

In the instant case the preponderance of the evidence shows that arrangement had been made with the bank for it to release the mortgage, and not until that agreement was reached was the deed turned over to appellee and his money paid to the grantors. When this was done, and not until then, appellee took possession, cleared and cultivated the land, paid the taxes, and we think the overwhelming weight of evidence is that this was all done with the understanding that the 40 acres had been released from the mortgage.

It is true the cashier of the bank testifies that he does not recall the conversations with appellee and others, but they testify positively that the mortgage had been satisfied. It would be quite unusual for the bank to have a mortgage on this property and permit anyone to occupy it, cultivate and pay taxes on it the length of time appellee did, if there had been no agreement to release.

Equity cases are tried here *de novo*, but unless the decree of the chancellor is against the preponderance of the evidence, we do not reverse.

In the instant case we think the decree of the chancellor is supported by the preponderance of the evidence, and the decree is therefore affirmed.